SCJ/NES: ABS/FTB
F.# 2013R00183

FILED
CLERK

2016 JUN 17  PM 12: 41

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

- against -

ALEKSANDR PIKUS,
MARK TSYVIN,
MAKSIM VERNIK,
DENIS SATYR and
MALVINA YABLONSKAYA,

Defendants.

– – – – – – – – – – – – – – – X

**INDICTMENT**

CR **16-** **329**

Cr. No. _____

(T. 18, U.S.C., §§ 371,
982(a)(1), 982(a)(7),
1956(a)(1)(B)(i), 1956(h), 2 and
3551 et seq.; T. 21, U.S.C., §
853(p))

JOHNSON, J.

SCANLON, M.J.

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    The Medicare and Medicaid Programs

1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least age 65 or disabled. Medicare was administered by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including New York. Individuals who received benefits under Medicaid were similarly referred to as "beneficiaries."

3.      Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

4.      Medicare was divided into multiple parts. Medicare Part B covered the costs of physicians' services and outpatient care, such as physical therapy, occupational therapy and diagnostic tests. Generally, Medicare Part B covered these costs only if, among other requirements, they were medically necessary and ordered by a physician.

5.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were physical therapy, occupational therapy and diagnostic tests. Generally, Medicaid covered these costs only if, among other requirements, they were medically necessary and ordered by a physician.

6.      Medical providers and suppliers that sought to participate in Medicare Part B and Medicaid and to bill Medicare and Medicaid for the cost of their treatment of Medicare and Medicaid beneficiaries and related benefits, items and services were required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN") from each program. The PIN/PTAN allowed medical providers

and suppliers to submit bills, known as claims, to Medicare and Medicaid, respectively, to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had supplied or provided to beneficiaries.

7.      Medical providers and suppliers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services.

8.      To receive reimbursement from Medicare for a covered service, a medical provider was required to submit a claim, either electronically or in writing, through Form CMS-1500 or Form UB-92.  To receive reimbursement from Medicaid for a covered service, a medical provider was required to submit a claim, either electronically or in writing, through the New York State eMedNY-150003 Claim Form.  Each claim form required certain important information, including (a) the beneficiary's name and identification number; (b) the PIN/PTAN of the doctor or other qualified health care provider who ordered the health care benefit, item or service that was the subject of the claim; (c) the health care benefit, item or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item or service; and (e) the date upon which the benefit, item or service was provided or supplied to the beneficiary.  By submitting the claim, the provider was certifying, among other things, that the services were not induced by kickbacks, that the services were rendered to the beneficiary and that the services were medically necessary.

B.      The Internal Revenue Service and Its Responsibilities

9.      The Internal Revenue Service ("IRS"), an agency within the U.S. Department of the Treasury, was responsible for administering and enforcing federal revenue

laws and regulations regarding ascertainment, computation, assessment and collection of taxes owed to the United States by its citizens and residents.

10. In order to accurately assess and collect taxes, the IRS must, among other things, determine taxpayers' actual income, credits and deductions. To accomplish this mission, the IRS used, among other means, tax returns filed pursuant to the tax laws of the United States, as set forth in Title 26 of the United States Code. In general, all domestic corporations in existence for any part of a tax year must file an income tax return for that year, whether or not they have any taxable income. A corporation generally must file with the IRS a United States Corporation Income Tax Return, Form 1120 ("Form 1120"), or a United States Income Tax Return for an S Corporation, Form 1120S ("Form 1120S"), to report its gross receipts, income, gains, losses, deductions, credits and income tax liabilities.

11. Any income or losses to an S Corporation flow through and must be reported by any shareholder of the corporation on his or her personal income tax return, specifically United States Individual Income Tax Return, Form 1040 ("Form 1040").

C.     Relevant Entities and Persons

(1)     The Medical Clinics and Related Individuals and Entities

12. Ideal Health PT, P.C. ("Ideal Health") was a New York State corporation located at: (a) 2263 E. 15th Street, Brooklyn, NY 11229; (b) 2365 E. 13th Street, Brooklyn, NY 11229; and other locations. Ideal Health purported to provide physical therapy services to Medicare and Medicaid beneficiaries.

13. Co-conspirator Eduard Noykhovich was a licensed physical therapist authorized to participate in the Medicare and Medicaid programs. Noykhovich incorporated

Ideal Health in approximately September 2009, and served as the President of Ideal Health from approximately September 2009 through approximately October 2015.

14.     Oleg Dron Handz On Occupational Therapy, P.C. ("Handz On") was a New York State corporation located at 1729 East 14th Street, #A, Brooklyn, NY 11229, and other locations.  Handz On purported to provide occupational therapy services to Medicare and Medicaid beneficiaries.

15.     Co-conspirator Oleg Dron was a licensed occupational therapist authorized to participate in the Medicare and Medicaid programs.  Dron incorporated Handz On in approximately October 2006, and served as the President of Handz On from approximately October 2006 through approximately January 2014.

16.     Prime Care on the Bay, LLC ("Prime Care") and Bensonhurst Mega Medical Care P.C. ("Bensonhurst") were New York State corporations.  Prime Care was located at 1711 Sheepshead Bay Road, Brooklyn, NY 11235.  Bensonhurst was located nearby at 2761 Bath Avenue, Brooklyn, NY 11214.  Both Prime Care and Bensonhurst were authorized to participate in Medicare and Medicaid.  They purported to provide, among other things, physical therapy, occupational therapy and diagnostic tests to Medicare and Medicaid beneficiaries.

17.     Bensonhurst Best Care, Inc. ("Best Care") was a New York State corporation located at 2761 Bath Avenue, Brooklyn, NY 11214.  Best Care purported to provide management services to Prime Care and Bensonhurst.

18.     From approximately February 2008 through approximately February 2011, Prime Care, Bensonhurst and Best Care operated under the direction and control of,

among others, Co-conspirator 1 ("CC-1"), an individual whose identity is known to the grand jury.

(2) The Defendants, Co-Conspirators and Related Shell Companies

19. The defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, owned and operated a number of shell companies as set forth below (the "Shell Companies").

20. The defendant ALEKSANDR PIKUS was the owner and operator of several shell companies (the "Pikus Companies"), including, among others, the following:

(a) Advanced Carrier Opportunity LLC, which purported to do business at 1210 Kings Highway, Brooklyn, NY 11229, and other locations;

(b) Bee Nurse Employment Solutions, Inc., which purported to do business at 2815 Coyle Street, Brooklyn, NY 11235, and other locations;

(c) National Research Group LLC, which purported to do business at 574 Industrial Loop, Staten Island, NY 10309, and other locations; and

(d) Project Design A2Z, LLC, which purported to do business at 1208 Broadway, Hewlett, NY 11557, and other locations.

21. The defendant MARK TSYVIN was the owner and operator of several shell companies (the "Tsyvin Companies"), including, among others, the following:

(a) Sonotech Corp., which purported to do business at 6 Prospect Avenue, Hewlett, NY 11557, and other locations;

(b) Zen Marketing, Inc., which purported to do business at 8681 18th Avenue, Brooklyn, NY 11214, and other locations; and

(c) MGMS, Inc., which purported to do business at 1208 Broadway, Hewlett, NY 11557, and other locations.

22. The defendant MAKSIM VERNIK was a clinic manager at Ideal Health, Handz On and other medical clinics controlled and operated by the defendants and their co-conspirators.

23. The defendant DENIS SATYR was the owner and operator of several shell companies (the "Satyr Companies"), including, among others, the following:

(a) Kings Boro Management Corp., which purported to do business at 2955 Brighton 4th Street, Brooklyn, NY 11235, and other locations; and

(b) Biz Net Solutions, Inc., which purported to do business at 2327 83rd Street, Brooklyn, NY 11214, and other locations.

24. The defendant MALVINA YABLONSKAYA was the owner and operator of several shell companies (the "Yablonskaya Companies"), including, among others, the following:

(a) Healthy Palm Management, Inc., which purported to do business at 2263 East 15th Street, Brooklyn, NY 11229, and other locations; and

(b) Bay Solutions Plus, Inc., which purported to do business at 2263 East 15th Street, Brooklyn, NY 11229, and other locations.

25. Co-conspirator Yevgeniy Sudman owned and operated a shell company called Prime Care Medical Management, Inc. ("PCMM"), which purported to do business at 2955 Brighton 4th Street, Brooklyn, NY 11235, and other locations. Sudman used bank accounts opened in the name of PCMM to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below.

7

26.     Co-conspirator Roman Azimov owned and operated a number of shell companies (the "Azimov Companies") and used bank accounts opened in the names of those companies to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below.  Those shell companies included, among others, the following:

(a)     Surf Consulting Group Inc., which purported to do business at 2911 Surf Avenue, Brooklyn, NY 11224, and other locations;

(b)     Neptune Consulting Services, Inc., which purported to do business at 1218 Neptune Avenue, Brooklyn, NY 11224, and other locations;

(c)     R.E.M.M. Research & Marketing, Inc., which purported to do business at 46 Hollywood Avenue, Lynbrook, NY 11563, and other locations;

(d)     B.Z.R. Inc., which purported to do business at 2276 East 13th Street, Brooklyn, NY 11229, and other locations;

(e)     Tri State Recruiting Services, Inc., which purported to do business at 46 Hollywood Avenue, Lynbrook, NY 11563, and other locations; and

(f)     Prime Collections Solutions Inc., which purported to do business at 46 Hollywood Avenue, Lynbrook, NY 11563, and other locations.

27.     Co-conspirator 2 ("CC-2"), an individual whose identity is known to the grand jury, owned and operated a shell company, BRD Group Inc. ("BRD Group"), which purported to do business at 2001 Avenue P, Brooklyn, NY 11230, and other locations. CC-2 used bank accounts opened in the name of BRD Group to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below.

8

28.     ALEKSANDR PIKUS had control over and gave directions to the other defendants and their co-conspirators with regard to the bank accounts opened in the names of the Shell Companies.

29.     The Shell Companies were United States corporations for which the defendants ALEKSANDR PIKUS, MARK TSYVIN, DENIS SATYR and MALVINA YABLONSKAYA and their co-conspirators were required to file yearly Form 1120 tax returns and Form 1120S tax returns.

II.     The Money Laundering, Kickback and Fraud Scheme

30.     Between approximately February 2008 and March 2016, the defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, agreed to execute and executed a scheme to enrich themselves as follows: (a) they referred beneficiaries to Ideal Health, Handz On, Prime Care, Bensonhurst and other medical clinics in return for illegal kickback payments; (b) they paid kickbacks to ambulette drivers and others in return for providing beneficiaries to Ideal Health, Handz On, Prime Care, Bensonhurst and other medical clinics; (c) they artificially and corruptly increased demand for medical services by making and causing to be made cash payments to Medicare and Medicaid beneficiaries to induce those beneficiaries to subject themselves to medically unnecessary services, including physical and occupational therapy, performed by Noykhovich, Dron and others; (d) they submitted and caused to be submitted claims to Medicare and Medicaid for services that were fraudulently induced by kickbacks; (e) they submitted and caused to be submitted claims to Medicare and Medicaid for medically unnecessary services; and (f) they engaged in deceptive acts and

contrivances intended to hide information, mislead, avoid suspicion and avert further inquiry into the scheme.

31. Specifically, and in part, the defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, submitted and caused to be submitted to Medicare and Medicaid claims for services, including physical and occupational therapy, that they knew were induced by cash payments to beneficiaries and were not medically necessary. In order to receive payment for these claims, Noykhovich, Dron and other Medicare and Medicaid providers submitted and caused the submission of paperwork that permitted them to receive electronic deposits from Medicare and Medicaid into bank accounts under their control.

32. The defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, established and controlled the Shell Companies, which were purportedly in the business of providing consulting, advertising, marketing, medical support and other commercial services. In reality, the Shell Companies provided only superficial staffing or business support services, and were primarily used to conceal the nature of the kickback payments to the defendants and generate cash to pay kickbacks to ambulette drivers, beneficiaries and others.

33. Upon receiving payments from Medicare and Medicaid, Noykhovich, Dron and other Medicare and Medicaid providers transferred most of the proceeds of this scheme to the defendants with checks made payable to the various Shell Companies as well as other companies controlled by the defendants and their co-conspirators. These payments were made in return for the referral of beneficiaries to Ideal Health, Handz On, Prime Care, Bensonhurst and other medical clinics. On behalf of the referred beneficiaries, Noykhovich,

Dron and other Medicare and Medicaid providers submitted claims for services that were subsequently paid for, in whole and in part, by Medicare and Medicaid.

34.     The defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, also transferred funds between the Shell Companies' bank accounts using checks written to each other. These intercompany transfers were designed, in whole and part, to further disguise the nature, location, source, ownership and control of the proceeds generated by the scheme.

35.     The defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, converted many of the checks written to the Shell Companies into cash through a series of transactions that included, among other steps, cashing checks for a fee at check-cashing businesses. These cash transactions were designed, in whole and part, to disguise the nature, location, source, ownership and control of the proceeds generated by the scheme.

36.     The defendants ALEKSANDR PIKUS, MARK TSYVIN, DENIS SATYR and MALVINA YABLONSKAYA concealed this check-cashing activity and did not report these cashed checks as gross receipts on the Forms 1120 and Forms 1120S filed on behalf of the Shell Companies that they controlled. The under-reporting of gross receipts to these Shell Companies enabled these defendants to under-report their income on their personal income tax returns because profit, if any, to the Shell Companies that filed Forms 1120S was supposed to flow through the Shell Companies to the shareholder defendants who owned them.

37.     The defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others,

11

fabricated and caused to be fabricated invoices falsely stating that the checks written to the

Shell Companies were fees for management and other business services, when, in fact, as the

defendants well knew and believed, these payments were made, in whole and part, (1) to

enrich the defendants through the receipt of kickbacks for the referral of beneficiaries, and

(2) to generate cash to pay kickbacks to ambulette drivers, beneficiaries and others.  These

false invoices were designed, in whole and part, to further conceal the nature, location,

source, ownership and control of the proceeds of the scheme.

38.     Between approximately February 2010 and December 2014, Ideal

Health submitted approximately $20.2 million in claims to Medicare and Medicaid, and was

paid approximately $5.6 million on those claims.

39.     Between approximately January 2011 and January 2014, Handz On

submitted approximately $11.3 million in claims to Medicare and Medicaid, and was paid

approximately $3.8 million on those claims.

40.     Between approximately February 2008 and February 2011, Prime Care

submitted approximately $31.3 million in claims to Medicare and Medicaid, and was paid

approximately $17.2 million on those claims.  Between approximately January 2009 and

February 2011, Bensonhurst submitted approximately $23.2 million in claims to Medicare

and Medicaid, and was paid approximately $11.6 million on those claims.

COUNT ONE
(Money Laundering Conspiracy)

41.     The allegations contained in paragraphs one through forty are realleged

and incorporated as if fully set forth in this paragraph.

42. In or about and between February 2008 and March 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (a) wire fraud, health care fraud and conspiracy to commit wire fraud and health care fraud, in violation of Title 18, United States Code, Sections 1343, 1347 and 1349, respectively, and (b) receiving health care kickbacks, paying health care kickbacks, and conspiracy to receive and pay health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b)(1), Title 42, United States Code, Section 1320a-7b(b)(2), and Title 18, United States Code, Section 371, respectively, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNTS TWO THROUGH NINE
(Money Laundering — Laundering of Monetary Instruments)

43. The allegations contained in paragraphs one through forty are realleged and incorporated as though fully set forth in this paragraph.

44. On or about the dates identified below, within the Eastern District of New York and elsewhere, the defendants ALEKSANDR PIKUS, MARK TSYVIN, DENIS SATYR and MALVINA YABLONSKAYA, together with others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions affecting interstate commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (a) wire fraud, health care fraud and conspiracy to commit wire fraud and health care fraud, in violation of Title 18, United States Code, Sections 1343, 1347 and 1349, respectively, and (b) receiving health care kickbacks, paying health care kickbacks, and conspiracy to receive and pay health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b)(1), Title 42, United States Code, Section 1320a-7b(b)(2), and Title 18, United States Code, Section 371, respectively, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more of the specified unlawful activities, as set forth below:

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| TWO | PIKUS | 9/30/2011 | Cashed check number 581 in the approximate amount of $4,962 payable to Project Design A2Z, LLC and drawn on Commerce Bank account number *****7387, held in the name of Oleg Dron Handz On Occupational Therapy, P.C. |
| THREE | PIKUS | 2/24/2012 | Cashed check number 1001 in the approximate amount of $9,750 payable to Project Design A2Z, |

14

| Count | Defendant | Approximate Date | Transaction |
|---|---|---|---|
| | | | LLC and drawn on Astoria Federal Savings Bank account number *****7055, held in the name of Prime Care Medical Management, Inc. |
| FOUR | TSYVIN | 3/9/2012 | Cashed check number 2115 in the approximate amount of $4,700 payable to MGMS, Inc. and drawn on HSBC account number *****1736, held in the name of R.E.M.M. Research & Marketing, Inc. |
| FIVE | TSYVIN | 9/21/2012 | Cashed check number 1305 in the approximate amount of $5,600 payable to MGMS, Inc. and drawn on Astoria Federal Savings Bank account number *****7055, held in the name of Prime Care Medical Management, Inc. |
| SIX | SATYR | 11/8/2011 | Cashed check number 650 in the approximate amount of $8,961 payable to Kings Boro Management Corp. and drawn on Commerce Bank account number *****7387, held in the name of Oleg Dron Handz On Occupational Therapy, P.C. |
| SEVEN | SATYR | 10/9/2012 | Cashed check number 1338 in the approximate amount of $9,250 payable to Kings Boro Management Corp. and drawn on Astoria Federal Savings Bank account number *****7055, held in the name of Prime Care Medical Management, Inc. |
| EIGHT | YABLONSKAYA | 4/17/2012 | Cashed check number 1037 in the approximate amount of $4,100 payable to Healthy Palm Management, Inc. and drawn on Sovereign Bank account number *****7372, held in the name of Ideal Health PT, P.C. |

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| NINE | YABLONSKAYA | 10/3/2012 | Cashed check number 1226 in the approximate amount of $4,000 payable to Healthy Palm Management, Inc. and drawn on Sovereign Bank account number *****7372, held in the name of Ideal Health PT, P.C. |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

## COUNT TEN
(Conspiracy to Receive and Pay Health Care Kickbacks)

45.     The allegations contained in paragraphs one through forty are realleged and incorporated as if fully set forth in this paragraph.

46.     In or about and between February 2008 and March 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, did knowingly and willfully conspire: (1) to solicit and receive kickbacks, directly and indirectly, overtly and covertly, in return for referring Medicare and Medicaid beneficiaries to Ideal Health, Handz On, Prime Care, Bensonhurst and other medical clinics for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(1); and (2) to offer and pay kickbacks, directly and indirectly, overtly and covertly, to induce the referral of Medicare and Medicaid beneficiaries to Ideal Health, Handz On, Prime Care, Bensonhurst and other medical clinics for the furnishing of and arranging for the furnishing

16

of items and services for which payment may be made in whole and in part under Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

47.     In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants ALEKSANDR PIKUS, MARK TSYVIN, MAKSIM VERNIK, DENIS SATYR and MALVINA YABLONSKAYA, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

(a)     On or about September 30, 2011, PIKUS cashed check number 581 in the approximate amount of $4,962 payable to Project Design A2Z, LLC and drawn on Commerce Bank account number *****7387, held in the name of Oleg Dron Handz On Occupational Therapy, P.C.;

(b)     On or about March 9, 2012, TSYVIN cashed check number 2115 in the approximate amount of $4,700 payable to MGMS, Inc. and drawn on HSBC account number *****1736, held in the name of R.E.M.M. Research & Marketing, Inc.;

(c)     On or about April 1, 2013, VERNIK negotiated check number 4131 in the approximate amount of $2,900 payable to him and drawn on JPMorgan Chase Bank account number *****5551, held in the name of BRD Group Inc.;

(d)     On or about November 8, 2011, SATYR cashed check number 650 in the approximate amount of $8,961 payable to Kings Boro Management Corp. and drawn on Commerce Bank account number *****7387, held in the name of Oleg Dron Handz On Occupational Therapy, P.C.; and

(e)     On or about October 3, 2012, YABLONSKAYA cashed check number 1226 in the approximate amount of $4,000 payable to Healthy Palm Management,

17

Inc. and drawn on Sovereign Bank account number *****7372, held in the name of Ideal Health PT, P.C.

(Title 18, United States Code, Sections 371 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT ELEVEN</u>
(Conspiracy to Defraud by Obstructing the Lawful Functions
of the Internal Revenue Service)

48.     The allegations contained in paragraphs one through forty are realleged and incorporated as if fully set forth in this paragraph.

49.     In or about and between February 2008 and March 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEKSANDR PIKUS, MARK TSYVIN, DENIS SATYR and MALVINA YABLONSKAYA, together with others, did knowingly and intentionally conspire to defraud the United States by impairing, impeding, obstructing and defeating, through deceitful and dishonest means, the lawful government functions of the Internal Revenue Service of the Department of the Treasury, an agency and department of the United States, in the ascertainment, computation, assessment and collection of revenue,  to wit: income taxes.

50.     In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants ALEKSANDR PIKUS, MARK TSYVIN, DENIS SATYR and MALVINA YABLONSKAYA, together with others, committed and caused to be committed, among others, the following:

<u>OVERT ACTS</u>

(a)     On or about June 30, 2011, PIKUS filed and caused to be filed a Form 1120 on behalf of Advanced Carrier Opportunity LLC, under penalty of perjury, for

18

the year 2009, which tax return was false insofar as it under-reported the gross receipts of

Advanced Carrier Opportunity LLC;

(b)     On or about September 16, 2013, TSYVIN filed and caused to

be filed a Form 1120S on behalf of Sonotech Corp., under penalty of perjury, for the year

2012, which tax return was false insofar as it under-reported the gross receipts of Sonotech

Corp.;

(c)     On or about August 16, 2013, SATYR filed and caused to be

filed a Form 1120 on behalf of Kings Boro Management Corp., under penalty of perjury, for

the year 2012, which tax return was false insofar as it under-reported the gross receipts of

Kings Boro Management Corp.; and

(d)     On or about October 29, 2012, YABLONSKAYA filed and

caused to be filed a Form 1120S on behalf of Healthy Palm Management, Inc., under penalty

of perjury, for the year 2012, which tax return was false insofar as it under-reported the gross

receipts of Healthy Palm Management, Inc.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH NINE

51.     The United States hereby gives notice to the defendants charged in

Counts One through Nine that, upon conviction of any of these offenses, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which

requires any person convicted of such offense to forfeit any property, real and personal,

involved in such offense, or any property traceable to such property.

19

52.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TEN

53.     The United States hereby gives notice to the defendants charged in Count Ten that, upon conviction of that offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offenses to forfeit any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses.

54.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(7); Title 21, United States Code,

Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:_____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

_____
ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F. #2013R00183

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*ALEKSANDR PIKUS, ET AL,*

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(1), 982(a)(7), 1956(a)(1)(B)(i),
1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

A true bill.

_____ *Leth A Broyles*

*Foreperson*

*Filed in open court this* ____ 1 7ᵗʰ _____ *day,*

*of* _ June ____ *A.D. 20* _1 6_

_____

*Clerk*

*Bail, $* _____

_____

*A. Brendan Stewart, Trial Attorney, (718)-254-6158;*